UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GARY DALE LOVELAND,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF UTAH - DIVISION OF CHILD AND FAMILY SERVICES (DCFS), et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER PERMITTING AMENDED COMPLAINT AND TEMPORARILY GRANTING MOTION TO WAIVE FILING FEE (DOC. NO. 2)**<br><br>Case No. 2:26-cv-00755<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

Gary Dale Loveland makes a litany of allegations against various Utah agencies, the Utah Transit Authority, the Salt Lake City Police Department, and two doctors, claiming violations of his rights dating back to the 1970s.[1] His allegations run the gamut: from misconduct related the severe abuse he suffered decades ago in foster care, to police targeting, to the mishandling of his requests and complaints by various agencies and individuals. But the Utah agencies Mr. Loveland names are immune from his claims, and he otherwise fails to state a plausible claim for relief. If he chooses to, Mr. Loveland may file an amended complaint by **November 6, 2026**. The court again temporarily grants the motion to waive the filing fee[2] pending screening of the amended complaint, if any is filed.

---

[1] (*See* Compl., Doc. No. 1.)

[2] (Doc. No. 2.)

## LEGAL STANDARDS

Mr. Loveland filed this case without an attorney and without paying the filing fee.[3] When a court lets a party file a case without paying a filing fee, it must dismiss the case if the complaint "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune."[4] To decide this, the court uses the standard applied to motions to dismiss under Rule 12(b)(6).[5] To survive dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[6] Courts accept well-pleaded factual allegations as true, viewing them and drawing reasonable inferences in the plaintiff's favor.[7] But courts do not accept plaintiffs' conclusory allegations as true.[8] "Threadbare recitals" are insufficient.[9] And "a plaintiff must offer specific factual allegations to support each claim."[10] This court also

---

[3] (*See* Compl., Doc. No. 1; Mot. to Waive Filing Fee, Doc. No. 2.)

[4] 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

[5] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007); *see also* Fed. R. Civ. P. 12(b)(6).

[6] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[7] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[8] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[10] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[11]

Because Mr. Loveland is representing himself (proceeding without an attorney), his filings are liberally construed.[12] But he still must follow the procedural rules.[13] For instance, he must allege "sufficient facts on which a recognized legal claim could be based."[14] Simply put, courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15]

**MR. LOVELAND'S COMPLAINT**

Mr. Loveland filed a form civil rights complaint with a narrative attachment detailing his factual allegations.[16] He checked a box indicating he is bringing a *Bivens*[17] claim, while also referencing 42 U.S.C. § 1983.[18] He names a number of defendants, including "State of Utah – Division of Child and Family Services," the Utah Labor

---

[11] *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citation omitted).

[12] *Hall*, 935 F.2d at 1110.

[13] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[14] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[15] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[16] (Compl., Doc. No. 1.)

[17] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[18] (Compl., Doc. No. 1 at 3.) Page references are to the CM/ECF pagination.

Commission, the Utah Department of Workforce Services, the Salt Lake City Police Department, the Utah Transit Authority, Dr. Paula Cook, and Dr. Judith Warner.[19] Mr. Loveland explains his claims relate to "a longstanding, continuous pattern of institutional misconduct by state agencies, local authorities, and associated actors within the State of Utah" dating back to 1976.[20] While he mentions Fourteenth Amendment due process and equal protection and the Americans with Disabilities Act[21] (ADA) in his narrative attachment,[22] he does not identify what causes of action he brings against each defendant, or explain what relief he seeks. His allegations relating to each defendant are summarized next.

State of Utah – Division of Child and Family Services. Mr. Loveland alleges he suffered severe physical and psychological abuse in foster care in the 1970s and 1980s.[23] He claims a state-appointed attorney who represented him in a case related to the abuse had a conflict of interest, coerced him into an unfavorable resolution, and improperly deducted money from his settlement.[24] He then suffered further abuse at a

---

[19] (Compl., Doc. No. 1 at 2–3, 7.) Mr. Loveland also named Greg Flynn as a defendant but later voluntarily dismissed him. (Notice of Voluntary Dismissal of Def. Greg Flynn, Doc. No. 6.)

[20] (Compl., Doc. No. 1 at 8.)

[21] 42 U.S.C. § 12101 et seq.

[22] (*See* Compl., Doc. No. 1 at 8–9, 11 (referencing Fourteenth Amendment due process and equal protection); *id.* at 11, 13–14 (referencing the ADA).)

[23] (*Id.* at 8.)

[24] (*Id.* at 8–9.)

second foster placement, and state authorities failed to investigate or intervene when he reported it.[25] Instead, they threatened to institutionalize him and forced him to be adopted by the abusive family.[26] The state later charged his foster father and foster brother for child molestation, but "intentionally delayed and allowed the statute of limitations to expire" to cover up the fact that the state ignored Mr. Loveland's earlier reports.[27] His "attempts to seek legal redress were repeatedly thwarted" by attorneys who dismissed his claims.[28] Mr. Loveland claims all these actions violated his Fourteenth Amendment due process rights.[29]

<u>Salt Lake City Police Department.</u> Mr. Loveland claims Salt Lake City Police Department officers "persistently targeted" him, "mischaracterizing non-violent trauma responses and CPTSD manifestations as violent or criminal behavior."[30] He specifically identifies two incidents. First, a "drunk and prohibited driver operating a banned vehicle" rear-ended him, but officers ignored these violations, "manufactured false accident diagrams," and "unlawfully" cited Mr. Loveland for an improper lane change.[31] When he rejected a plea, law enforcement officers and prosecutors "maliciously

---

[25] (*Id.* at 9.)

[26] (*Id.*)

[27] (*Id.*)

[28] (*Id.*)

[29] (*Id.* at 8–9.)

[30] (*Id.* at 10.)

[31] (*Id.*)

retaliated by adding an impossible, fabricated charge of 'aggravated stopping at speed.'"[32] Prosecutors later dropped the charges down to a minor infraction in order to strip Mr. Loveland of his right to a public defender and a jury trial.[33]

Second, Mr. Loveland used a "short defensive stick" to defend himself from an unprovoked assault by his landlord's son and the son's girlfriend.[34] Responding officers refused to charge the son and girlfriend and did not follow "mandatory domestic incident protocols requiring removal of the primary aggressor."[35] This exposed Mr. Loveland to a hostile environment and continuing harassment.[36] Mr. Loveland claims the officers' response violated his Fourteenth Amendment rights to due process and equal protection.[37]

<u>Utah Labor Commission.</u> Mr. Loveland claims the Utah Labor Commission mishandled an employment discrimination complaint. He alleges that after he reported a "crime" to the human resources department, his employer wrongfully accused him of stealing, interrogated him in a confined space (aggravating his CPTSD), and terminated

---

[32] (*Id.*)

[33] (*Id.*)

[34] (*Id.*)

[35] (*Id.*)

[36] (*Id.* at 10–11.)

[37] (*Id.* at 11.)

him.[38] The Utah Labor Commission then ignored "documented evidence of retaliation, coercion, and employer misconduct" and "rubber-stamped the employer's position."[39]

Dr. Warner and Dr. Cook. Mr. Loveland alleges medical personnel, including Dr. Judith Warner and Dr. Paula Cook, engaged in "extensive spoliation of evidence, record tampering, and bad-faith collusion."[40] In this portion of the complaint, Mr. Loveland's allegations are rambling and difficult to follow. Among a long list of grievances against nonparties,[41] he claims he discovered "manipulated correspondence" between Dr. Warner and Dr. Cook, revealing an "administrative conspiracy" to shield Dr. Cook and Project Reality (an addiction treatment center) from malpractice liability.[42] He also claims Dr. Cook and her staff "engineered [his] wrongful expulsion from the treatment program."[43]

Department of Workforce Services. Mr. Loveland alleges DWS improperly denied an ADA accommodation request.[44] He asked to submit filings via email on days

---

38 (*Id.*)

39 (*Id.*)

40 (*Id.* at 12.)

41 (*See id.* at 11–13.) He details various grievances against Project Reality (an addiction treatment center), Health Choice Utah (a health insurance agency), the University of Utah's Moran Eye Center, another doctor, and unnamed employees of these entities. None are named as defendants.

42 (*Id.* at 12.)

43 (*Id.*)

44 (*Id.* at 13–14.)

when the agency's online system malfunctions, due to "documented CPT/PTSD and learning disabilities."[45] In denying his request, DWS falsely claimed he did not have "an active claim or plan," and "omitted the legally mandatory 'undue hardship' justification clause."[46] He also alleges DWS improperly delayed responding to a public records request.[47]

Utah Transit Authority. Mr. Loveland lists the Utah Transit Authority as a defendant,[48] but his complaint contains no allegations relating to this defendant.

## ANALYSIS

In his complaint, Mr. Loveland references *Bivens*, 42 U.S.C. § 1983, the Fourteenth Amendment due process and equal protection clauses, and the ADA. But Utah and its agencies are immune from these claims. And Mr. Loveland fails to state a plausible claim for relief against any other defendant.

### A. Utah Transit Authority

First, Mr. Loveland fails to state a claim against the Utah Transit Authority, where he lists it as a defendant but does not mention it again in his complaint. He does not

[45] (*Id.* at 13.)

[46] (*Id.*)

[47] (*Id.* at 14.)

[48] (*Id.* at 7.)

identify how this defendant harmed him or violated his rights, as required to state a claim.[49]

**B. *Bivens* Claim**

Mr. Loveland also fails to state a plausible *Bivens* claim. *Bivens* provides a recovery mechanism for violations of federal rights in certain circumstances.[50] But for a *Bivens* claim, Mr. Sorenson would need allege a federal official, acting in an individual capacity, violated his rights.[51] Mr. Loveland does not state a cognizable *Bivens* claim, where he does not allege any defendant is a federal actor.

**C. Section 1983 Claims**

Section 1983 provides a recovery mechanism for violations of federal rights by state actors in certain circumstances.[52] "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[53] Mr. Loveland does not specify which defendants he is suing under

---

[49] *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

[50] *See Chapoose v. Hodel*, 831 F.2d 931, 935 (10th Cir. 1987).

[51] *See id.* ("A *Bivens* action seeks to impose personal liability and damages on a federal official for the violation of a constitutional right." (citation omitted)); *Smith*, 561 F.3d at 1099 ("A *Bivens* claim can be brought only against federal officials in their individual capacities.").

[52] *See* 42 U.S.C. § 1983; *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988) (Section 1983 "provides a recovery mechanism for deprivation of a federal right.").

[53] *Watson*, 857 F.2d at 694.

§ 1983, but where he alleges DCFS and the Salt Lake Police Department violated his Fourteenth Amendment rights to due process and equal protection,[54] these are construed as § 1983 claims. And where Mr. Loveland broadly claims the other state agencies and the doctor defendants violated his rights generally, the court also addresses potential § 1983 claims against these defendants.

*1. Utah and State Agency Defendants*

The State of Utah and its agencies are immune from suit under § 1983. The Eleventh Amendment prohibits suits against a state or agencies acting as "arms of the state"[55]—unless the state waives its sovereign immunity or Congress abrogates it through legislation.[56] Utah has not waived its immunity to being sued under § 1983, and Congress has not abrogated it.[57] Accordingly, the State of Utah and state agency

[54] (*See* Compl., Doc. No. 1 at 8–11.)

[55] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 70 (1989) (citation omitted); *see also Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1559 (10th Cir. 1992) ("Eleventh Amendment immunity extends to state agencies that act as arms of the state.").

[56] *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by [its] own citizens as well as citizens of another State."); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought.").

[57] *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999) (explaining in § 1983 action that "Utah has not waived its Eleventh Amendment immunity by statute"); *Anderson v. Herbert*, 745 F. App'x 63, 69 (10th Cir. 2018) (unpublished) ("Utah has not waived its [Eleventh Amendment] immunity against civil-rights suits.").

defendants—DCFS, DWS, and the Utah Labor Commission[58]—are immune from Mr. Loveland's § 1983 claims.[59]

*2. Salt Lake City Police Department*

Mr. Loveland fails to state a plausible § 1983 claim against the Salt Lake City Police Department. For one thing, the police department is not a suable legal entity independent from the city.[60] But even if the complaint is construed as bringing a claim against Salt Lake City,[61] Mr. Loveland fails to state a claim for municipal liability under § 1983.

---

[58] The Utah Transit Authority is not a state agency entitled to Eleventh Amendment immunity; rather, it is a "local district political subdivision of the State of Utah." *Giddings v. Utah Transit Auth.*, 107 F. Supp. 3d 1205, 1208 (D. Utah 2015).

[59] *See Buck v. Utah Labor Comm'n*, 73 F. App'x 345, 347 (10th Cir. 2003) (unpublished) (holding the Utah Labor Commission was entitled to Eleventh Amendment immunity where the parties did not dispute it was an arm of the state); *Schaffrath ex rel. R.J.H. v. Thomas*, No. 98-4030, 1999 U.S. App. LEXIS 20175, at *14 (10th Cir. Aug. 25, 1999) (unpublished) (holding the Utah DCFS was entitled to Eleventh Amendment immunity as an arm of the state); *Wilkerson v. Utah Dep't of Workforce Servs.*, No. 2:13-cv-00956, 2013 U.S. Dist. LEXIS 184371, at *3 (D. Utah Nov. 13, 2013) (unpublished) (holding the Utah Department of Workforce Services was entitled to Eleventh Amendment immunity as an arm of the state), *R. & R. adopted*, 2014 U.S. Dist. LEXIS 9755 (D. Utah Jan. 27, 2014) (unpublished).

[60] *See Ketchum v. Albuquerque Police Dep't*, No. 91-2200, 1992 U.S. App. LEXIS 5134, at *6 (10th Cir. Mar. 12, 1992) (unpublished) (noting police departments are not suable entities under § 1983 because they lack legal identities separate from the municipality) (citing *Martinez v. Winner*, 771 F.2d 424, 443 (10th Cir. 1985)).

[61] Courts sometimes construe pro se complaints against a governmental subdivision as asserting a claim against the main governmental entity. *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) (construing claims against the Salt Lake County Sheriff's Office as claims against the county); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008) (unpublished) (same).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[62] "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[63] "There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury."[64]

Here, Mr. Loveland's alleges police officers violated his rights in citing him for a traffic violation and in their response to a reported assault. But he does not allege facts showing the officers' actions resulted from any municipal policy or custom. Accordingly, he fails to state a plausible § 1983 claim against Salt Lake City.

*3. Dr. Warner and Dr. Cook*

Mr. Loveland also fails to state a § 1983 claim against Dr. Warner or Dr. Cook. First, he does not allege either doctor was a state actor. He alleges Dr. Cook worked at

---

[62] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell*, 436 U.S. at 694).

[63] *Id.* (quoting *Monell*, 436 U.S. at 694).

[64] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

"St. Marks Family Practice,"[65] but he does not allege this is a government entity. And he does not identify Dr. Warner's employer. He alleges no facts supporting a finding that either doctor acted under color of state law. Second, while Mr. Loveland generally alleges these doctors manipulated records and conspired to remove him from a treatment program, he does not identify what federal rights they violated. In other words, he fails to allege either element of a § 1983 claim against these doctors.

*4. Conclusion*

In sum, the state agency defendants (DCFS, DWS, and the Utah Labor Commission) are immune from suit under § 1983. And Mr. Loveland fails to state a plausible § 1983 claim against the Salt Lake City Police Department, Dr. Warner, or Dr. Cook.

**D. ADA Claim**

Mr. Loveland claims DWS violated the ADA by denying his request for accommodations—specifically, his request to submit filings by email on days the online system malfunctioned.[66] The court construes this as a claim under Title II of the ADA.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by

---

[65] (Compl., Doc. No. 1 at 12.)

[66] (*See id.* at 13–14.) Mr. Loveland also mentions that he requested ADA accommodations from "Health Choice Utah." (*Id.* at 11.) But he does not name this entity as a defendant, nor does he allege it failed to accommodate him or otherwise violated the ADA.

any such entity."[67] To state a claim under Title II, Mr. Loveland must plausibly allege "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[68]

Because DWS is a state agency, the first question is whether Eleventh Amendment immunity bars the Title II claim. Recall, congressional abrogation is an exception to Eleventh Amendment immunity. And "there is no question Congress intended Title II to abrogate state sovereign immunity."[69] But the abrogation must be "a valid exercise of [Congress's] enforcement power under § 5" of the Fourteenth Amendment.[70] The three-step framework for evaluating this requires the court to determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.[71]

Mr. Loveland's claim fails at the first step: he does not plausibly allege a Title II violation. He alleges DWS denied his request to submit filings by email, but he does not

---

[67] 42 U.S.C. § 12132.

[68] *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

[69] *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012); *see also* 42 U.S.C. § 12202.

[70] *Guttman*, 669 F.3d at 1117.

[71] *Id.* at 1113 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

allege he was excluded from or denied the benefits of DWS services as a result. He does not identify any instance in which he was prevented from submitting filings or pursuing a claim with DWS. In other words, he fails to allege the second element of a Title II claim: that he was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities."[72]

Because Mr. Loveland does not allege any conduct by DWS which violates Title II, the abrogation of immunity in that statute does not apply, and DWS is entitled to Eleventh Amendment immunity.

### E. Chance to Amend

For all these reasons, the complaint is subject to dismissal.[73] Nevertheless, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[74] Mr. Loveland will be given a chance to amend his complaint.

## CONCLUSION

1. Mr. Loveland may file an amended complaint by **November 6, 2026**. The words "Amended Complaint" should appear in the caption of the document.

---

[72] *Robertson*, 500 F.3d at 1193.

[73] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[74] *Kay*, 500 F.3d at 1217 (citation omitted).

2. Mr. Loveland is advised that an amended complaint will completely replace all prior versions of the complaint. Claims not realleged in the amended complaint will be deemed abandoned.[75]

3. Once filed, the court will screen the amended complaint under 28 U.S.C. § 1915(e) and Rule 3-2(b) of the Local Rules of Civil Practice.[76]

4. The court again temporarily grants the motion to waive the filing fee[77] pending screening of the amended complaint, if any is filed.

5. Failure to file an amended complaint may result in dismissal of this action.

DATED this 23rd day of October, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[75] *See Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1137 (10th Cir. 2024) ("An amended complaint supersedes a prior complaint and renders it of no legal effect. Failing to replead a claim, when given leave to do so, ordinarily constitutes abandonment when an amended complaint is filed." (citation modified)).

[76] *See* DUCivR 3-2(b), available at https://www.utd.uscourts.gov/sites/utd/files/Civil%20Rules%20Final%202025.pdf [https://perma.cc/P5J9-A9YV].

[77] (Doc. No. 2.)